[No. 30270.   Department Two.   December 11, 1947.]

LYLE GEORGE GRAY, *Respondent*, v. THE CITY OF SEATTLE, *Appellant*.[1]

*A. C. Van Soelen* and *Arthur Schramm*, for appellant.

*Erle W. Horswill*, for respondent.

MALLERY, C. J.—This is an appeal from a judgment based on a verdict of the jury for eight thousand dollars for personal injuries sustained by the plaintiff below (respondent here), when he fell and broke his leg on a bus operated by the appellant.

The most favorable evidence which the jury could believe showed that the respondent, who was suffering from Paget's disease, which affected the bone in his leg in the vicinity of a fracture sustained many years ago while playing baseball, had for several weeks been taking treatments from a doctor for his condition. Prior to the day in question, he had taken the same bus with the same driver for this purpose and on at least one occasion had had to stand during his trip. He walked with a cane and had an obvious limp.

On September 5, 1947, about noon, he boarded one of the appellant's trolley coaches at Fourteenth avenue south

[1]Reported in 187 P. (2d) 310.

and Hill street in Seattle. He got on the bus behind two lady passengers by taking hold of the rail, stepping up with his sound leg, then pulling the affected leg up and repeating until he reached the platform, where he handed the operator twenty-five cents, received tokens, put one in the fare box and the others in his pocket. As he turned to find a seat, the bus started with a "terrific" jerk. He was thrown down along the center aisle of the bus, losing his hat, glasses, and cane, and fracturing his leg in the fall.

The operator of the bus had noticed him on this occasion and on previous occasions as he entered the bus, and was aware of his limp and the use of a cane.

Of the seventeen assignments of error, four are formal in nature. As to them, we need say no more than that the evidence was sufficient to support the verdict. The remaining assignments of error are directed to the instructions given by the court, those requested by the appellant and refused by the court, and the "unnecessary repetition of instructions charging defendant with the highest degree of care."

Since our disposition of this matter will be to remand the case to the lower court for a new trial, we will discuss the principles of law involved in the case.

Speaking generally, the court submitted the case to the jury upon the alternative theories that the respondent was entitled to recover for his injury, without regard to any personal infirmity, if the operator of the bus was negligent in starting it with a violent jerk, because the rule of care required in the operation of such a public conveyance is the highest degree of care that is consistent with practical operation of the conveyance; and, secondly, the respondent was entitled to recover if his infirmity was of such a nature that there was a duty upon the driver of the bus to see that he was seated before starting the conveyance in motion, provided that the operator knew, or in the exercise of the highest degree of care could have ascertained, the infirmity of the respondent to be such. Both these theories were embodied in the instructions given to the jury by the court. The appellant contends that the latter is erroneous; that

is to say, that the highest degree of care required of the operator relates to his operation of the conveyance only and not to the ascertainment of possible infirmities of his passengers.

This assignment of error is meritorious. The testimony was in conflict as to there being a jerk, as well as to how and where it occurred. The jury could have resolved this question of fact against the respondent, with the result that a recovery could only be based on the second theory of his case. This made it important, in determining the question of negligence, to know what degree of care the operator was bound to exercise in ascertaining the infirmities of his passengers.

This is a case of first instance in this state on this question. The cited cases involving intoxication, in which the rule is that a passenger is presumed to be sane and sober, are not in point. Neither is our case of *Fagerdahl v. North Coast Transportation Co.*, 178 Wash. 482, 35 P. (2d) 46, although it can be deduced from it that the operator of a public conveyance may not ignore any obvious and apparent condition of a passenger, and that the question of whether the infirmity is obvious and of such a nature that the operator should have known of it, is a question for the jury.

While this point has been seldom passed upon elsewhere and never before in this state, it seems to have been assumed that the care to be exercised by an operator in determining the infirmities of his passengers is that degree which would be exercised by an ordinarily reasonable and prudent man, and that what is a reasonable conclusion as to a passenger's condition, under all of the circumstances, is for the jury to determine. This would not require a high degree of medical diagnostic skill or omniscience on the part of the operator to discover anything with regard to the infirmities of passengers, but requires him only to come to such a conclusion as would be reached from an ordinary reasonable layman's observation. The highest degree of care required of the operator *in the operation of his vehicle* must be in accord with the surrounding circumstances which are known or ought to be known. As to the physical con-

dition of a passenger, the operator ought to know what an ordinarily prudent person would know from what he ought to observe from obvious appearances.

We therefore hold that the court erred in instructing the jury that the operator must exercise the highest degree of care in ascertaining the infirmities of a passenger. The jury might well have felt that the operator must ascertain infirmities of his passengers by some method other than a layman's observations, such, for instance, as by asking questions of the passenger as to his condition, and that failing to do so would not constitute the highest degree of care.

The jury might have believed that there was no violent jerk when the vehicle was started, and that an ordinarily prudent person would not have concluded from the appearance of the respondent that his safety depended upon his being seated before starting, and yet find that the highest degree of care in ascertaining his condition might have discovered something that would have made it negligence for the operator to so start. Thus the question of recovery could have turned on the degree of care required in ascertaining the physical condition of the passenger.

The judgment is reversed, and the cause remanded to the trial court for a new trial.

BEALS, ROBINSON, STEINERT, and JEFFERS, JJ., concur.